IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIO FAVIAN VASQUEZ, | ) | |
| ID #1154800, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:06-CV-2339-G (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a February 21, 2003, conviction for aggravated sexual assault of a child under fourteen in Cause No. F92-41441-H. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

In May of 1992, the State indicted petitioner for aggravated sexual assault of a child. (Trial Transcript at 2). After being released on bond and absconding to Mexico, he was re-arrested in Dallas in 2002. Petitioner pled not guilty to the charged offense, and on February 20-21, 2003, he

was tried before a jury, found guilty, and sentenced by the jury to a seventy year sentence. (Tr.:7, 28; R. 1:166).

The state appellate court recounted the evidence presented at trial as follows:

> Appellant was indicted for the offense in April 1992; however, he was not tried for the offense until February 2003. At the time of trial, the victim, appellant's stepdaughter, was 23 years old. The victim testified that, when she was 12 years old, she became pregnant. At that time, the victim told her mother that appellant had sexually abused her. The victim stated that she had "intercourse" with appellant and that she knows what is meant by the term "intercourse." The victim further stated that on one occasion appellant asked her to "lie down" on his lap. The victim put her head in appellant's lap, and he asked her to "do a favor" for him. The victim then unzipped appellant's pants and put his penis in her mouth. The victim stated that appellant put his penis "inside" of her more than once. The victim further testified that appellant put his penis "[o]n her two privates." The victim definer her "two privates" as her "vaginal" and her "butt."

> Appellant's written statement was admitted into evidence. In his statement, appellant admitted that the victim touched his penis with her hands and put his penis in her mouth. Appellant further stated that the victim "put his penis in her back, and her anus."

*Vasquez v. State*, Nos. 11-03-00136-CR (Tex. App.–Eastland, Jan. 31, 2005, pet. denied) (footnotes omitted).

In his direct appeal, petitioner challenged the legal and factual sufficiency of the evidence to support his conviction. The Eleventh District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Id.* On January 5, 2006, petitioner filed a state application for writ of habeas corpus in which he raised the same issues he raises in his federal petition. (State Habeas Transcript at 2). Without adopting the trial court's findings, the Court of Criminal Appeals denied petitioner's state application without written order on November 8, 2006. (S.H.Tr.:cover).

On December 18, 2006, petitioner filed the instant petition for federal habeas relief. Respondent filed an answer on March 30, 2007, (*see* Answer) and provided the state-court records.

**C.  Substantive Issues**

Petitioner asserts seventeen grounds of error, which the Court has grouped as follow:

(1) the trial court[1] erred by

> -incorrectly instructing the jury on the applicable punishment range and parole law (Grounds 1 and 2);
>
> -reading the indictment to the jury (Ground 3);
>
> -incorrectly stating the meaning of "beyond a reasonable doubt" to the jury (Grounds 5, 6, and 7);
>
> -telling the jury that not every defendant is innocent (Ground 8);
>
> -telling the jury about the law of foreign countries (Ground 9);
>
> -improperly discussing petitioner's right not to testify with the venire (Ground 11);
>
> -informing the venire that some of them might be touched by the charged offense through the media, friends, or family experience (Grounds 12 and 14);
>
> -using the term "accused" instead of "alleged defendant," "offense" instead of "alleged offense," and "victim" instead of "alleged victim" (Grounds 4, 12, 13);
>
> -instructing the jury to believe that some elements of an offense are more important than others (Ground 12);
>
> -stating to the venire that it was not proper for a juror to serve who had exposure to sexual assault through media, friends, or family who could not remain impartial (Ground 14); and
>
> -making many comments to the venire with the purpose of trying to obtain sympathy

---

[1] Although petitioner initially attributes grounds 1-2 to the State in his list of claims, the body of his argument attributes them to the Court.  Likewise, while he attributes grounds 5-9 to the prosecution, the record reflects that the allegedly erroneous statements were made by the trial judge.  Accordingly, the Court construes these claims as allegations of trial court error.

for the complaining witness (Ground 14);

(2) the prosecution erred by

      -making an improper argument at punishment regarding petitioner's parole eligibility (Ground 2);

      -reading the indictment to the jury (Ground 3);

      -not referring to petitioner as the "alleged defendant" (Ground 4);

      -indirectly making reference during closing to petitioner's failure to testify (Ground 10);

      -coercing the complaining witness into testifying regarding the frequency of sexual contact with petitioner despite her reluctance to do so (Ground 15);

      -leading the complaining witness to testify to a false truth (Ground 15); and

      -manipulating the complaining witness into stating the she was afraid of petitioner on one occasion (Ground 16);

(3) petitioner was sentenced in violation of double jeopardy (Ground 17);

(4) counsel provided ineffective assistance at trial by

      -failing to present adequate mitigating evidence at trial (Ground 2);

      -failing to object to the trial error pointed out by petitioner in his petition including: the trial court's reference to the law of foreign countries; the court's statement that some elements of an offense are more important than others; the court referring to the complaining witness as the "victim;" and the court's numerous comments to the jury meant to obtain sympathy for the complaining witness (Grounds 5, 9, 12, 13, 14); and

      -failing to object to the jury charge (Grounds 5, 6);

(5) counsel provided ineffective assistance on appeal by

      -failing to raise trial errors on appeal, including: the trial court's reference to the law of foreign countries; the prosecution's reference to petitioner's failure to testify at trial; the court's comment that some elements of an offense are more important than other; and the court referring to the complaining witness as the "victim" (Grounds

2, 9, 10, 12, 13);

(6) petitioner is actually innocent (Ground 12); and

(7) the complaining witness was not competent to testify and was mentally incapable of testifying. (Ground 15).

## D. Exhaustion

Respondent states that petitioner has exhausted his state court remedies.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's

state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution

6

of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. TRIAL COURT ERROR (CLAIMS 1-9, 11-14)

Petitioner asserts that the trial court erred in making various statements to the venire during the voir dire process, in making comments to the jury to try to gain sympathy for the victim, and by incorrectly instructing the jury regarding the elements of the offense at the guilt phase of the trial and parole eligibility at the punishment phase of the trial.[2]

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017,

---

[2] Respondent contends that all of petitioner's grounds for relief should be considered procedurally barred because they were not raised on direct appeal and because petitioner did not make any objections at trial. While Texas state law does generally require that record-based claims be raised on direct appeal and requires that an objection be made at trial in order to preserve error, the Court of Criminal Appeals did not adopt the trial court's findings regarding any procedural bars in denying state habeas relief. Therefore, the state court did not expressly apply any procedural bar. Because none of petitioner's claims entitle him to relief, the Court does not address whether it may recognize state procedural bars even where not relied upon by the state courts and proceeds to the merits. *See Nixon v. Epps*, 405 F.3d 318, 323-24 (5th Cir. 2005) (noting without objection that district court addressed procedurally barred claim on the merits); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must

show the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

"A trial judge's comments . . . are placed in the proper context by viewing the 'totality of the

circumstances, considering factors such as the context of the remark, the person to whom it is

directed, and the presence of curative instructions.'"  *United States v. Saenz*, 134 F.3d 697, 702 (5th

Cir. 1998)  (quoting *United States v. Lance*, 853 F.2d 1177, 1182 (5th Cir. 1988)).

> To rise to the level of constitutional error, the district judge's actions, viewed as a
> whole, must amount to an intervention that could have led the jury to a predis-
> position of guilt by improperly confusing the functions of judge and prosecutor.  The
> judge's intervention in the proceedings must be quantitatively and qualitatively sub-
> stantial to meet this test.

*United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994) (citations omitted).  A proper instruction

to the jury is generally sufficient to cure an innocent misstatement by a trial judge to the jury.  *See*

*United States v. Saenz*, 134 F.3d 697, 713 (5th Cir. 1998); *United States v. Buchanan*, 585 F.2d 100,

102 (5th Cir. 1978).  "Only when the judge's conduct strays from neutrality is the defendant thereby

denied a constitutionally fair trial."  *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979).

## A.  Trial Court Statements to the Venire Regarding the Law (Claims 1, 3, 5-8, 11)

In his first ground, petitioner alleges that the trial court instructed the venire on the wrong

applicable punishment range.  Under Texas law, the aggravated sexual assault of a child under

fourteen years of age is a first-degree felony that is punishable by imprisonment for between five and

ninety-nine years or age of life. *See* TEX. PENAL CODE §§ 12.32, 22.021(1)(B) & (2)(B).  The trial

court informed the venire that the range of punishment was for a first-degree felony and stated the

correct range. (Supp. R.:27).  The trial court committed no error.

In his third ground, petitioner alleges that the trial court erred in reading the indictment to

the venire. The trial judge read the allegation contained in the indictment to the venire after stating that the State was required to prove this allegation. (Supp. R.:6). While petitioner asserts that this reading prejudiced him because the facts did not establish that he ever penetrated the victim, he has not shown how a customary reading of an indictment is trial error, especially when the court states that the State is required to prove the charge. The trial judge, however, also went on to state that the indictment was no proof of guilt, that indictments are returned against people who are not guilty, and that the defense did not have any burden of proof. (Supp. R.:14-15). Moreover, as respondent notes, at trial the jury received specific instructions that the indictment was not evidence of guilt and should not be considered as such. (Tr.:16). As juries are presumed to follow a court's instructions, *Woods v. Johnson*, 75 F.3d 1017, 1036 n. 29 (5th Cir. 1996), petitioner cannot show that any juror who sat on his jury considered the charge against him as evidence of guilt. The trial court committed no error in this respect.

In his fifth through seventh grounds, Petitioner complains that the trial judge erred in her explanation of the State's burden of proof to the venire. The trial judge informed the venire that the State had to prove guilt beyond a reasonable doubt, that this is not an easy burden, that it is the toughest burden in the legal system, and that twelve jurors are presumed to be reasonable people, but that the burden is not beyond a shadow of a doubt or beyond all doubt. (Supp. R.:15-17). The trial court stated the correct burden of proof to the venire, and the jury was instructed on this burden in the jury charge at the guilt phase of the trial. (Tr.:14-18). The trial court did not err in this respect.

In his eighth claim, Petitioner contends that the trial court erred by telling the venire that not every defendant is innocent. When discussing with the venire the State's burden of proof, the

trial judge spoke about the presumption of innocent afforded every criminal defendant. She then stated that this presumption did not mean that every person who was on trial in the criminal courts was, in fact, innocent. Rather, she explained, the presumption meant that the State carries the burden of proof and must prove a case beyond a reasonable doubt. (Supp. R.:17-18). The trial judge did not misstate the law, and petitioner has not shown that this common-sense statement somehow prejudiced his defense. Again, the jury was instructed on the burden of proof and was instructed that all persons are presumed innocent and that a defendant is not required to prove his innocence or produce any evidence at all. (Tr.:17). Petitioner has not overcome the presumption that jurors follow the instructions given to them and has therefore shown no error.

In his eleventh ground for relief, petitioner asserts that the trial court erred in informing the venire about petitioner's right not to testify at trial. When speaking about the right not to testify, the trial court informed the venire that there might be many reasons why a defendant might choose not to testify that are unrelated to guilt. In particular, she mentioned a case where the defendant had a serious stuttering problem, or circumstances where someone would not want to be cross-examined by someone more sophisticated or through an interpreter. The judge also mentioned that a defendant might not testify on the advice of his attorney due to a pending civil case or for some other reason. She then stated that this decision could not be held against a person for any reason. (Supp. R.:18-19). These statements were not incorrect statements of the law. Moreover, the jury was instructed that it could not refer to or allude to the defendant's decision not to testify during deliberations and could not take the decision into consideration for any purpose as a circumstance against the defendant. (Tr.:16). As jurors are presumed to follow the court's instructions, petitioner has shown no error.

The state court denied all of these claims on their merits, and this decision is not contrary to federal law. (S.H.Tr.:cover). Petitioner is not entitled to relief on the basis of these grounds.

## B. <u>Terminology Used by the Trial Court During Voir Dire (Claims 4, 12-13)</u>

Petitioner asserts that the trial court erred in referring to him during the voir dire process as the "accused" rather than the "alleged defendant." He also contends that the trial court erred in using the term "victim" when discussing sexual assault victims with the venire. Petitioner asserts that the trial court erred in using the term "offense" to the venire rather than "alleged offense." In particular, petitioner contends that the use of this terminology created bias against him.

Petitioner was the "accused" in this case, and the trial judge did not err in referring to him as such. With regard to petitioner's claim that referring to the complaining witness as a "victim" during voir dire created sympathy for her and inflamed the minds of the jurors, a reading of the record from the voir dire process reveals that the trial judge referred to the complaining witness as the "alleged victim." She then went on to discuss sexual assault victims in general and the various reactions they might have to the situation and the need to keep an open mind regarding various situations. (Supp. R.:25-26). Viewed in context, this discussion did not create bias against petitioner or inflame the minds of the jurors. Likewise, during the voir dire process, the trial judge stated that some of the members of the venire might have had a close encounter with this type of offense, and they would have to be able to set aside their feelings and render a verdict based on the facts of this case. (Supp. R.:29). Again, viewed in context, the use of the term "offense" in this manner did not create bias against petitioner or inflame the minds of the jurors.

Petitioner has not shown that the trial judge's conduct strayed from neutrality such that he was denied a constitutionally fair trial. The state court denied these grounds on their merits.

(S.H.Tr.:cover).  This decision is not contrary to federal law, and these grounds do not form a basis for relief.

**C.  Subjects Discussed by Trial Court During Voir Dire (Claims 9, 12, 14)**

Petitioner erroneously argues in his ninth ground that the prosecutor was arguing outside of the record and misleading the jury into believing the law of another country when, in fact, the statement was made by the trial judge.  Moreover, the trial judge merely made a short statement that unlike some countries that the veniremembers may have heard about, the United States has a constitution that provides criminal defendants with certain rights including the right not to testify and the requirement that the burden of proof rests with the State.  This general statement contrasting other anonymous countries with the criminal justice system in this country was not error.

Petitioner also asserts in his twelfth and fourteenth grounds that the trial court erred by creating sympathy for the complaining witness resulting in a trial that was not fair and impartial when she acknowledged that many members of the venire have been touched in some way by the offense of sexual assault and then stated that no person could sit as a juror whose experiences are such that his or her emotions would prevent him or her from rendering a rational verdict. (Supp. R.:29).  Contrary to petitioner's argument, the trial court's statements did not create bias.  Rather, the court was attempting to identify those potential jurors who could not put aside their own feelings and served in an impartial manner.  Indeed, after making these statements, several potential jurors indicated to the trial judge that they could not serve in an impartial manner in an aggravated sexual assault case, including people who had either been victims of sexual assault themselves or had a friend or family member who had been a victim. (Supp. R.:31-43, 46).  The prosecution and the defense then later agreed to excuse several members of the venire because they had indicated that

12

they could not be impartial jurors because of personal experiences with the charged offense. (Supp. R.:48-49). Petitioner has not shown that the trial judge's comments or conduct strayed from neutrality and in some manner prejudiced petitioner.

Likewise, in his fourteenth ground for relief, petitioner makes the global argument that the trial judge made numerous comments to the venire in an attempt to gain sympathy for the complaining witness. Petitioner does not, however, state what these specific comments were. Moreover, petitioner cites to no additional parts of the record, other than those already discussed, where the trial judge made these alleged improper statements. Similarly, petitioner alleges in his twelfth ground for relief, without citing to the record as support, that the trial judge informed the potential jurors during venire that some elements of the charged offense were more important than others. Such a conclusory allegation does not warrant habeas relief.

The state habeas court denied these claims on their merits at the state level. (S.H.Tr.:cover). This decision is not contrary to federal law. Petitioner is not entitled to relief on these claims. It is recommended that these claims be denied.

## D. Jury Charge Regarding Good Time Credits and Parole Law (Claim 2)

In his second ground, petitioner asserts that the trial court incorrectly instructed the jury in his case regarding applicable parole law and good time credits. In particular, he asserts that the jury charge regarding parole law would have led the jury to believe that his sentence would be shortened by the accumulation of good time credits because it could affect his parole and discharge dates.

At the punishment phase of the trial, the jury received written instructions. Included in these instructions is the following statement:

> Under the law applicable in this case, the defendant, if

sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prison who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentenced imposed or 15 years whichever is less, without consideration of any good time. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Tr.:25-26).

This jury instruction was given to the jury as required under TEX. CRIM. PROC. CODE ANN. art. 37.07 § 4(a) (Vernon 2007). "Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "A state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden." "Before a federal court may overturn a conviction resulting from a state trial" on a challenge to the instructions given to the jury, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemn-ed,' but that it violated some right which was guaranteed to the defendant by the Fourteenth

Amendment." *Cupp*, 414 U.S. at 146; *Reddix v. Thigpen*, 805 F.2d 506, 512 (5th Cir. 1986). "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)). Thus, the harmless-error analysis does apply to cases involving improper jury instructions. *See Neder v. United States*, 527 U.S. 1, 9 (1999).

With regard to the instruction on good time credits, the Fifth Circuit Court of Appeals has found the first sentence of this instruction to be "an incorrect statement of law, as inmates do not earn time off of the period of incarceration, but rather, earn the right to be considered for earlier release due to the award of good time." *See Galvan*, 293 F.3d at 765. In *Galvan,* however, the Fifth Circuit went on to hold that even if such error amounted to a constitutional error, habeas relief would not be warranted unless the error had a substantial and injurious effect or influence on the verdict under the *Brecht* standard. *Id.* Further, the jury is presumed to have followed the trial court's instruction prohibiting consideration of the extent to which good conduct time might be awarded to or forfeited by petitioner. *Id.*

In this instance, as the jury is presumed to have followed the instruction to disregard the manner in which good conduct time would be applied to petitioner, petitioner has shown no prejudice of constitutional magnitude from the inaccurate instruction. Petitioner has not overcome the presumption that juries follow the instructions given them. Petitioner has not shown that an inaccurate instruction regarding good conduct time had a substantial or injurious effect on the jury's decision. To the extent he argues that the jury should not have been informed at all regarding applicable parole law, petitioner has not shown any incorrect statement of the law. Moreover, the

jury in this case was specifically instructed not to consider the extent that parole time might impact the imposed sentence. The state court denied this claim on its merits (S.H.Tr.:cover), and this decision was not contrary to federal law. Consequently, petitioner is entitled to no habeas relief on this claim.

## IV. PROSECUTORIAL MISCONDUCT CLAIMS (CLAIMS 2-4, 10, 15-16)

Petitioner asserts that his due process rights were violated due to prosecutorial misconduct during the guilt and punishment phase of the trial. In particular, in his second ground, petitioner asserts that the State made an improper argument at punishment regarding petitioner's parole eligibility, and in his third ground for relief, petitioner asserts that the prosecution erred in reading the indictment to the jury. In his fourth ground, petitioner claims that the prosecution erred in not referring to petitioner as the "alleged defendant," and in his tenth ground for relief, petitioner asserts that the State indirectly made a reference during closing statements to his failure to testify. Finally, in his fifteenth ground, petitioner claims that the prosecution coerced the complaining witness to testify about the specific sexual contact that occurred between her and petitioner after she stated that she did not wish to talk about it or did not remember what occurred and thereby led her to testify to a false truth, and in his sixteenth ground he argues that the prosecution manipulated the complaining witness into testifying that she was afraid of petitioner on one occasion.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges

of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

In this case, petitioner has failed to show that the prosecution acted in an improper manner, much less that his trial was rendered fundamentally unfair by any improper actions. With regard to petitioner's third and fourth grounds for relief, as noted earlier, it is not error to read an indictment to a jury or to refer to a criminal defendant as the defendant.

With regard to petitioner's contentions that the prosecution made an indirect comment on his failure to testify during closing statements at the guilt phase of the trial (ground ten) and made an improper argument at punishment regarding his parole eligibility (ground two), petitioner has shown no error. The closing statements made by the two prosecutors at the guilt phase of the trial

17

show no comment, either directly or indirectly, regarding petitioner's decision not to testify. Instead, the prosecutors focused their arguments on the testimony the complaining witness gave at trial, the statement petitioner made to the police, and letters petitioner sent to his wife while he was in jail in which he implored her not to blame the complaining witness, even though it was her fault. (R. 1:119-121, 123-128). Under Texas law, there are four areas of permissible jury argument: 1) summations of the evidence; 2) reasonable inferences or deductions from the evidence; 3) responses to opposing counsel's argument; and 4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996). This argument was a summation of the evidence presented at trial, and there was no error. With regard to the prosecution's closing argument at punishment regarding petitioner's parole eligibility, one of the prosecutors stated that petitioner would become eligible for parole after he has served one-fourth of his sentence, or twenty years, whichever is less. He then went on to state that the jury was not permitted to guess how long petitioner would serve because that decision is made by the Board of Pardons and Paroles. (R. 1:156-57). This is a correct summary of the law provided to the jury in the jury charge. (Tr.:25). Therefore, this argument was not error.

In his fifteenth and sixteenth grounds, petitioner contends that the prosecution coerced the complaining witness into testifying regarding the frequency of sexual contact between her and petitioner, lead the complaining witness to testify to a false truth, and manipulated her into testifying that she was afraid of petitioner on one occasion. When the complaining witness was recalled by the State to testify after a lunch break, she acknowledged that when she testified earlier that she could not remember certain events, she did so because she did not want to talk about them. She then testified that while she could not remember the exact number of times petitioner had sexual intercourse with her, it was more than five times and that it happened "lots" of times. The

18

complaining witness further testified that petitioner had anal intercourse with her twice and had her perform oral intercourse on him on more than one occasion. Finally, she testified that she was only afraid of petitioner on one occasion after he was released from jail on bail and came to see her and her brother and sister. On cross-examination, she stated that she was not afraid of petitioner, that she loved him as a father, that her children were not afraid of him and loved him as their grandfather, and that he had always been available when she needed his assistance. (R. 1:62-67).

As to petitioner's claim that the prosecutor coerced the complaining witness and put words into her mouth regarding the number of sexual contacts between her and petitioner after she testified that she did not recall, it is clear from the record that she was not testifying truthfully when she testified earlier that she did not remember what sexual contact occurred. After being recalled by the State, the prosecutor asked open-ended questions, the witness testified that she did remember certain details, and she testified about them. The record also reveals that the witness testified in detail that she was no longer afraid of petitioner. The record does not support petitioner's claim that she was manipulated into giving the detailed testimony regarding the sexual contact or her past fear of petitioner or that this testimony was a "false truth."

The presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited, is not corrected, violates a criminal defendant's due process rights, if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Petitioner has presented no evidence that the prosecution elicited false testimony or misled the jury. His conclusory allegations of prosecutorial misconduct are insufficient to merit federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation).

These grounds were denied on their merits at the state level, and this decision is not contrary to federal law. (S.H.Tr.:cover). Petitioner is entitled to no relief on the basis of these claims.

## V. DOUBLE JEOPARDY (CLAIM 17)

In his seventeenth ground for relief, petitioner asserts that he was tried and sentenced in violation of the double jeopardy clause of the federal constitution because he had previously been sentenced *in absentia* to twenty-five years imprisonment. In particular, petitioner asserts that the attorney he had before he absconded to Mexico reached a plea agreement whereby petitioner was sentenced to twenty-five years.

Petitioner presents no evidentiary support for this allegation. The trial transcript includes the 1992 docket sheet for this case. This docket sheet indicates that bail was set for petitioner on May 20, 1992, attorney John Martinez was retained by petitioner on June 24, 1992, and Martinez appeared on petitioner's behalf on July 8, 1992, but petitioner did not appear. (Tr.:4). The trial docket does not reflect any further activity in the case until November 25, 2002, when petitioner was appointed a new attorney, Donna Winfield. (Tr.:4-5). There is no evidence that any plea bargain was reached between the prosecution and defense, and there is no evidence that even were such an agreement reached, it was approved by the trial court. Without any support for his allegations, habeas relief is unwarranted. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise a constitutional issue in federal habeas proceeding). This ground was denied on its merits at the state level. (S.H.Tr.:cover). That decision is not contrary to federal law, and this ground entitles petitioner to no relief.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (CLAIMS 2, 5-6, 9, 12-14)

Within many of his grounds for relief, petitioner asserts that his trial counsel was ineffective. In particular, petitioner asserts that counsel was ineffective for: 1) failing to present mitigation evidence at the punishment phase of the trial (ground two); 2) failing to object to alleged errors by the trial judge (grounds five, nine, twelve, thirteen, fourteen); and 3) failing to object to the jury charge (grounds five and six).

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

With regard to petitioner's assertion that his trial counsel was ineffective for failing to present mitigating evidence, the State presented no additional evidence at the punishment phase of the trial.

Defense counsel called Felix Saucedo, a probation officer, and petitioner. Saucedo testified regarding the many requirements that a probationer who has been convicted of sexual assault must follow, including required treatment, required polygraphs, required DNA testing, required registration as a sex offender, and required sexual activity reporting. (R. 1:129-131, 133). Petitioner testified that he took responsibility for his actions, that he had never been previously convicted of a felony, that he was sorry for what happened, and that he has not been around other children unsupervised since then. (R. 1:144-146). Petitioner has not alleged, much less shown, any other potential mitigating evidence that was available to counsel but was not presented. Petitioner has therefore shown neither that counsel was deficient in this regard nor a reasonable probability that, had some unknown additional evidence been presented at trial, he would have received a lesser offense.

With regard to petitioner's assertion that his trial counsel was ineffective for failing to object to a reference to the law of foreign countries, a statement by the trial court regarding the relative importance of the elements of the offense, a reference to the complaining witness as "victim," and comments from the trial judge that were allegedly meant to gain sympathy for the complaining witness, this Court has previously determined that these instances were not trial error. Under the *Strickland* standard, petitioner's trial attorney was not required to raise meritless objections. *See Koch v. Puckett*, 907 F.2d 524, 526 (5th Cir. 1990) (holding that counsel is not required to make futile motions or objections). Likewise, with regard to petitioner's assertion that counsel was ineffective for failing to object to the portion of the jury charge that concerned parole law, this Court has determined that any error did not have a substantial and injurious effect on the trial. Accordingly, petitioner has shown no prejudice from a failure to object. These allegations were denied on their

22

merits at the state level. (S.H.Tr.:cover). This decision is not contrary to federal law, and petitioner is entitled to no relief on these claims.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
## (CLAIMS 2, 9-10, 12-13)

In several of his grounds for relief, petitioner asserts that his appellate counsel was ineffective for failing to raise certain claims in his direct appeal brief. In particular, petitioner asserts that counsel was ineffective for failing to raise as points of error on appeal: 1) alleged error contained in the jury charge (ground two); 2) a reference to the law of foreign countries (ground nine); 3) an alleged reference to petitioner's failure to testify (ground ten); 4) a comment regarding the relative importance of the elements of the offense (ground twelve); and a reference to the complaining witness by the trial judge as "victim" (ground thirteen).

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether counsel has been ineffective is determined by using the standard enunciated in *Strickland*. In the context of appeals, the Constitution does not require an appellate attorney to advance every conceivable argument, and it can be effective assistance of counsel on appeal to focus on a few key issues. *Evitts v. Lucey*, 469 U.S. at 394; *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 920 F.2d 251 (5th Cir. 1990). Under *Strickland*, Petitioner must show a reasonable probability that, but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

This Court has previously determined that none of these alleged errors were, in fact, error. Accordingly, petitioner's appellate counsel was not required to raise a meritless points of error on

appeal. *See Koch v. Puckett*, 907 F.2d 524 at 526. These claims were denied on their merits at the state habeas level, and this decision is not contrary to federal law. (S.H.Tr.:cover). It is recommended that these claims be denied.

## VIII. ACTUAL INNOCENCE (CLAIM 12)

In his twelfth ground for relief, petitioner asserts that he is actually innocent of aggravated sexual assault. In particular, petitioner asserts that he is actually innocent but was convicted because the trial court had a bias towards the complaining witness and his trial attorney did not adequately protect his rights.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. The Court then assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim. The Court stated that the threshold showing for such an "assumed right" would be "extraordinarily high." *Id.* at 417. The Court then concluded that conflicting affidavits, submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18.

Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme Court and Fifth Circuit case

law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief, providing that a petitioner establish, as a threshold, that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court denied petitioner's state application on its merits, which contained this claim.

Moreover, if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to such relief. The alleged "bias" of the trial court has already been addressed, as has petitioner's assertion that counsel was ineffective. Furthermore, given that the complaining witness testified about the sexual assaults petitioner committed, and petitioner has presented no additional evidence that would call the testimony heard at trial into question, he has not met the high threshold of evidence required to prove actual innocence. The state court's denial of this claim is not contrary to federal law, and it is recommended that this claim be denied.

## IX. COMPETENCY OF COMPLAINING WITNESS (CLAIM 15)

In his fifteenth ground for relief, petitioner asserts that the complaining witness was not competent to testify because she did not have personal knowledge of the subject matter and that she

25

was mentally incapable of testifying due to being unable to observe and remember events and relate these events at trial, while recognizing the moral responsibility to tell the truth. The only support petitioner gives for these assertions is that the complaining witness initially testified that she did not remember certain events. As noted earlier, however, she later testified that she remembered what happened but preferred not to testify about certain matters. She did, however, specifically testify that petitioner sexually assaulted her on more than one occasion. Petitioner has not shown that the complaining witness did not have personal knowledge of the subject matter, that she was unable to observe and remember events and relate these events at trial, or that she did not recognize the moral responsibility to tell the truth at trial. This ground was denied on its merits at the state level, and this conclusion is not contrary to federal law. Petitioner is not entitled to relief on this claim.

## X. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writ. The Court of Criminal Appeals denied the state writ on its merits, and thus petitioner's claims were adjudicated on the merits. The decision at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## XI. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 6th day of January, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE